Good morning, Justice Gordon, Justice Hall, Justice Garcia, Council. My name is Melissa Latere and I'm counsel for the appellant in this matter, L-E-T-T-I-E. Is it pronounced Latere? Yes. Okay. This is not a microphone. Oh. It's a recording device. You have to speak loudly enough to compete with the traffic on LaSalle so that we can Thank you. Before I begin, I would like to reserve some time for rebuttal. How much? Five minutes, please. Okay. We represent a lender who made a loan in reliance upon a warranty deed knowingly executed by Ruthie Lee Ellis. Ellis' execution of that deed allowed the subsequent conveyances of and ultimately resulted in U.S. banks' mortgage lien being reported against the property which she now claims an interest in. Mortgage banks don't lend simply on a evidence of title, do they? And don't they inquire as to how title was acquired by the applying party? The lender relies on We've all gone through closings. I mean, when I went through my closings, I had to present my contract for sale. Was this one of those sort of closings? Yes, Your Honor. Did you have a contract for sale? There was a contract for sale. Between whom? The contract for sale, I believe, was between CRG, that was who was identified as the seller, and Benjamin Villasenor. And how did CRG acquire title? Did you inquire as to that? Did your bank inquire as to that? CRG was admittedly the beneficiary of the land trust who was in title at the time of the transaction involving the loan to Villasenor. And doesn't a mortgage bank want to find out basically how things got to the point where they're at now, applying for a mortgage? So you take a look at title insurance. You take a look at how the party that is conveying the property acquired title to make sure that you aren't going to encounter any surprises. But you did encounter a surprise in this case, right? Well, there was a surprise to the extent that Ellis filed an intervening complaint after the foreclosure action was completed asserting an interest in the title. And so the mortgage banks tend to have procedures that they want to follow to reduce the risk of those unknown surprises. And I just really wonder whether U.S. Bank, or if it was U.S. Bank, or maybe it was, well, I forget who the mortgage bank was. U.S. Bank is the successor. It was Wells Fargo initially, correct? Correct. It was Wells Fargo initially, and U.S. Bank is the successor in interest. Whether the banks, before they lent the money out, before they gave mortgage, assured themselves of the propriety of the transaction itself. Well, I'd like to address that because the process is for the lender to confirm title. And title is confirmed based on what's available in the public record. We all know that title alone doesn't dictate that a mortgage is going to be conveyed because the bank engages in other steps, doesn't it? Doesn't it go to the home to conduct an appraisal? Doesn't it see who's in possession of the home? Although the law states that possession can impute notice, in this case there's a unique circumstance. The title to the property when the loan was made to Villasenor was held in a land trust. And that changes the circumstances from other cases which have held that possession imputes notice. Well, then shouldn't the mortgage bank try to find out how long has the property been in the land trust to take advantage of the protection that the land trust passes on to everyone? There's no law in Illinois that suggests that there's a duty on the part of the lender to investigate the length of time that a property is held in a land trust as some indication of some impropriety or defect in title. Is that what this case really addresses? The state of the law regarding mortgages that are going to be given out by a bank? Well, that is what the lender has to rely on. The lender has to rely on the requirements of the law to investigate the status of title. But doesn't the lender also have to rely on the facts of the case? The lender does have to rely on the facts of the case. And to the extent that the facts of the case are unclear or perhaps raise maybe just a little bit a red flag, then the lender has to take steps to protect itself as well as the person in possession of the property. But the facts in this case were not unclear, and the state of the law says that the facts in this case did not impute notice. But we all know that you're the appellant, which means that the circuit court found the facts to be not as unclear as you believe they are. And, in fact, the circuit court ruled in favor of the other side. And so the question is why would the circuit court do that? What do you think was wrong in the circuit court's assessment of the case that resulted in a judgment against you? The circuit court's assessment of the case was incorrect when it came back on our motion to reconsider and found that the allegedly insufficiency of price was a fact that coupled with possession imputed inquiry notice. Because initially the trial court found that possession did not impute notice. And it wasn't until later that the court somehow found that that possession in conjunction with another fact. So maybe this is one of those unique situations that you alluded to a little while ago that would cause a circuit court judge to say the totality of the circumstances raises a red flag. But the totality and the circumstances of this case did not raise a red flag. There is no nexus between the possession by a party who was never in the chain of title and the fact that Ruthie Lee Ellis purportedly received inadequate consideration because the trial court... Do we have to use purportedly anymore? Well, we do because the trial court did not have evidence before it as to the value of the property. Given the circumstances of the case, is there still a question as to that? Given the circumstances of the case, we have to rely on the evidence that was before the court that the court had to consider. Even if value was before the court, the trial court improperly ignored the appraisal, which showed that Ruthie Lee Ellis received $86,000, which then would negate the court's finding that inadequate consideration was received. But aside from that, even if the consideration was inadequate, the Illinois Supreme Court has held that insufficiency of price is not a notice of defect. And I think that outcome that you've just described may be the outcome that was warranted under different circumstances. The circumstances in this case, or the environment, the lending environment, might cause someone to reconsider that position because banks were too free in giving out mortgages without making substantial inquiries. Well, this loan was made in 2006, I believe. Ruthie Lee Ellis conveyed the property in 2004. So if we look back to that time period and think about what was going on in the lending market at that time period and the mind frame of the lenders in that time period, I respectfully disagree that this circumstance of purported inadequacy of price would raise any concerns. Let me ask you this. Putting price aside, hasn't it been the law since the early 1800s that when someone is in possession of a piece of property that there's supposed to be an inquiry as to the right of the possession to see where that inquiry would lead? Hasn't that been the law since the early 1800s? It is the law. However, the court in Goldberg v. Erlich, which was affirmed by the court in LaSalle Bank v. Ferron, the rule of law in Goldberg was affirmed by the court in LaSalle Bank, is that when property is held in a land trust, that rule of possession changes because a tenant's occupancy of possession at that point is not inconsistent with record ownership. And the true inquiry here is, were there facts inconsistent with record ownership? And possession in this case was not inconsistent. So it's your theory then that if there's a trust, you don't have to make an inquiry, but if there isn't a trust, you do. Is that what you're telling us? The law says that the... No, just answer my question. Is that what you're telling us? That if there is a trust, then you don't have to make the inquiry, and if there's not a trust, you do. See, we want to understand how we should write this for you, if we're in your favor. So tell me, how do we do that? We say that people with a trust have a superior right over those who do not have trusts. Is that what we should do? We should write that it changes the duty of inquiry. The court in Goldberg... Okay, so you have more rights to have a trust, so every single person better start to put all their property in trust? In a sense, you're arguing that the duty is substantially less, that you don't have... Like Justice Gordon is alluding to, that all you have to do is confirm that the property exists, and as far as connecting the land trust to the person in possession of the property, there's no duty at all. Then let me clarify, because what I'm saying is that the law, as it exists today, states that the duty... The imputation of notice is different. The duty only extends to understanding the rights of the tenant, and the concept is that if a mortgagee does not... What was the tenant... What information was acquired by the mortgage bank regarding the individual's possession of the property? The lender relied on the status of title being placed in a trust, and to the extent that the grandson was occupying the residency, the understanding was that was by tenancy. The appraisal shows that the appraiser spoke to the seller-owner, which addresses the issue of the sufficiency of the prior price, but there's a notation there that the seller-owner was spoken to. So to the extent that the lender had notice of anything, it was what was in the appraisal, and it was not any representation by Ellis or the grandson or anybody else that Ellis had an interest in this property. Going back to Justice Gordon's question, is that the duty that exists or that falls on the mortgage bank whenever a land trust is involved? When you answer this, you're going into your rebuttal time. I'd like to respond to that briefly. The law states that there's a duty to inquire, and in this case it's to understand the tenant's occupancy. And if you don't inquire, you're on notice of what that right is. So in this case, the only thing... So you can inquire and simply be satisfied that an inquiry was made without regard to what that inquiry conveyed? Because certainly the individual in possession of the property had nothing to do with the CJR... CRJ... In this case, the lender is only bound by what it would have discovered if it had investigated. Had it investigated, it would have only learned that the grandson was the tenant of the property and would have only been bound by what the tenant's rights were. There would have been no duty further, and there was no representation or evidence in the public record or otherwise of Ruthie Lee Ellis' claim. I'd like to reserve the balance of my time for rebuttal. Thank you. Good morning, Your Honors. Counsel? Good morning. May it please the Court. The Court is... Counsel, your name? I'm sorry. Jeffrey Blumenthal with the firm of Slutsky, S-L-U-T-Z-K-Y, and Blumenthal, B-L-U-M-E-N-T-H-A-L, for Ms. Ruthie Lee Ellis.  The Court has clearly reviewed these briefs and understands exactly what's going on here. What happened to Mr. . . . the individual that dealt with this? Well, ultimately, Mr. Villasenor filed a bankruptcy, so any of his debts were discharged. CRG is no longer around. I don't know what efforts Wells Fargo or its successor, U.S. Bank, has made to try and . . . but I don't know at all what happened to him. What is clear is this, and I think it's important that I clarify at least a few misstatements by counsel. One thing that counsel said repeatedly is that the law in Illinois is something about no duty to inquire. That is absolutely false. It has never been the law in Illinois. Well, as far as the land trust, she was specifically making a distinction between the land trust and . . . There is no case in Illinois ever that says a land trust versus an individual is any different. The law in Illinois is unequivocal from the early 1800s, as Justice Gordon indicated. The duty to inquire, to become a BFP . . . What about the Ehrlich case? The Ehrlich case is a bankruptcy case. It is not an Illinois case. It is a bankruptcy case. That bankruptcy case has absolutely no weight here. It has no precedential value here. But I think more importantly, and I pointed this out in my brief, we can distinguish that on facts. For instance, that was a commercial establishment. This is a residential establishment of Miss Ellis and 111th and Bishop on the south side of Chicago. This is not a commercial establishment. But we don't need to distinguish Ehrlich. If the court, when the court reads the Ferone case, which counsel indicates, oh, that the Ehrlich case was affirmed by the Ferone case, that's a complete misstatement. What the Ferone case said is that the rationale employed in the Ehrlich decision, the Miller, it said specifically, and I'm quoting, while the result in Ehrlich favors the trial court's decision here, the rationale employed in Ehrlich, Miller, and Bernax Oil does not. And that rationale, which is throughout the history of Illinois cases, is that possession is akin to recording. That possession creates a duty to inquire. And when one is in possession of the property, therefore, that is as if you have a recorded instrument. So Miss Ellis essentially had a recorded interest because her possession of the property continued unimpeded, certainly through her grandson. And the other thing the court has hit right on its head, the nail right on its head, is this. What the bank is doing here is saying, oh, this isn't a land trust. Oh, we don't have to do anything further. We don't have to ask. Just, you know, it's a land trust. It doesn't matter who's in possession. Doesn't this case boil down to an observation, to say the least, that had the mortgage bank known what both sides now know, that the bank wouldn't have granted the mortgage? I hope not. And to the extent that it did grant the mortgage, that a court should inquire to see where the burden of granting that mortgage should actually fall. Well, absolutely. What we have is this. And I was actually, we almost had that line in our brief, what Your Honor alluded to previously was, well, was this in a different lending environment and so forth? And I submit, unfortunately, that hasn't changed. Because what you have is banks peppering a file with documentation. They always required a contract. They always required an appraisal, for instance. But the trouble is, someone, a loan officer, is looking at it. What are they looking at the appraisal for? They're looking at the appraisal to see how much the property value is. But in this particular appraisal, which the bank wants the court to consider, and I'm happy to have the court to consider, what it says in there tells you right away there's a fraud here. That appraisal, they had it in their file, but they had only looked at it. The contract. Yeah, they have a contract. At every lending center we have a contract. But unfortunately, they're looking at these documents and not really looking and seeing what's in front of them. This contract, it was obvious that there was a problem. And they had it. They just didn't bother to put the dots together. Because they're required to get a contract, they have a contract. They don't look to see what it means. And that's what happened here. And now, when they make a mistake, as they clearly did here, what are they trying to do? They're trying to buffalo their way to put the loss on Miss Ellis. And she's the innocent party. And she's the party two statutes were enacted specifically to protect. This is the class of persons. Miss Ellis, who gives a deed absolute on its face that is intended as security for a loan, is a mortgage. Those statutes were enacted to protect the people like Miss Ellis. And what does the bank say about those statutes? It ignores them. Of course it ignores them. It ignores them because those statutes can't be enforced consistent with the bank's position. There's just no way. And in that regard, I'll point out, this is not possession or the statutes. This is not the Conveyances Act. Let's just think for a second about the Conveyances Act. Because the Conveyances Act is not this perfect shield to an institution who lends, who says we can rely on the record. They can't rely on the record. Let's say there was a deed that's fraud in the execution. Well, that deed, no one has ever suggested that a lender is a BFP or can be protected because in light of a fraudulently executed deed. They can't be. There's just no way. This statute, what the Mortgage Act statute and even the Foreclosure Act statute working together provide, is that the legislature has dictated a public policy that just like fraud in the execution, when a mortgage, when a deed absolute on its face is given, but that deed is intended as a security just like a deed that's been fraudulently executed, just like in that situation, there is no deed. And therefore, subsequent purchasers are not bonafide purchasers. They take subject to whatever ownership rights there are. So in this case, it comes back around to itself. You know, we could say, and this case is easy, certainly. I think there have been two cases that we've cited that say the Mortgage Act trumps the Conveyances Act. I believe they do. There's no way to consistently allow a lender to be a BFP given a deed absolute on its face, which is intended as security for a loan, and then all of a sudden the person to whom that deed is given transfers the property to a third party and they're saying, oh, we wash our title. What? Mortgages are a difficult and very involved area. And the BFP, I understand that U.S. Bank is claiming to be a BFP, but can it be a BFP standing apart from the purchaser who brought U.S. Bank in? And to the extent that Villasenor can never come into court and claim to be a BFP, why should the lender be entitled to that? The lender is not entitled to that protection. The lender, it's a simple principle, and no one has ever disputed this principle. You cannot get, you cannot give better than you have. Someone who does not own anything can't wash the title by giving a deed first to one land trust, then another land trust, and then to a third party. If he never owned it in the first place, if I give a deed to your property to Justice Hall and Justice Hall gives it to Justice Gordon, Justice Gordon doesn't own that property because I never owned it. It can't be done. Just like here, if Villasenor or that land trust never owned it, which it never did, it cannot give a mortgage to the lender. It just can't happen. That's never been the law in Illinois. No one disputes that. It just doesn't exist. Didn't Ruthie Lee have a duty to record that property credit agreement? And she's not completely exonerated here. Should she not have recorded that? Well, let's look at the statute, and let's look at what it was intended to prevent. What that statute is, it says, a deed absolute conveyance on its face, which is what we have here, which is intended as a mortgage. The whole purpose of that statute is to prevent fraud, is to prevent people from taking advantage of some poor woman living on the south side who doesn't know better, who needs $10,000 to pay her real estate taxes, who gets that $10,000, pays it back, and yet she's taking advantage of. That is the purpose of that statute. And then to suggest, oh, even though the statute says you've got a deed that's absolute on its face, that person who's the victim of the fraud is supposed to somehow know, oh, I'm supposed to write, that's really a mortgage, and therefore I'm supposed to record something. That's preposterous. That whole statute is there to suggest, oh, she's supposed to record something else, and until she records something else, she's not protected. Well, that's reading something in the statute that's simply not there, that never was there, that was never intended there. And then this is what comes back to the law in Illinois. It circles back on itself, and that's what circles back here. That's why this case is really so easy. It circles back on itself because you have the law in Illinois that talks about the duty possession, and what is one of the cases that I cited in my brief say, I believe it's Ambrosius v. Katz, it's an Illinois Supreme Court case. What they say in that case is the reason if someone is defrauded, if someone is the victim of fraud, one of the ways they protect themselves is by remaining in possession. Their possession remains their protection that someone subsequently can't come along and say, oh, you don't own this property. That's the whole point, and that is exactly what they said in Ambrosius v. Katz. That's why the duty to inquire is so, if I can't forbid one of a better word, so sacred and upheld, and as I said, it has never, ever been captured. And that's the reason there really is no distinction between holding property in a warranty deed and holding property in a trust deed. Absolutely, and I'll submit, as I said, those facts are completely different, but the Ehrlich case is not law in Illinois. Ferone did not approve anything in the Ehrlich case. It said that when you look at the Ehrlich case, you read that decision, and throughout the decision, it cites every case in Illinois that says you have a duty to inquire, you have this, and what would they have found if they inquired? We all know what they would have found. They would have found Michael Ellis resides in the property because he believes his grandmother owns it, and with those two facts together, what evidence do we have of value? We have the deed, and who signed that deed? Ruthie Ellis for $10,000. They circle back. There's no way to look at the facts in totality, let alone just possession, and come up with a conclusion, and frankly, even argue in good faith that, oh, the bank is somehow a BFP entitled to protection here. It just cannot be. If the Court has no other questions. Thank you, Counsel. Thank you, Your Honor. Rebuttal. Rebuttal. Ruthie Lee Ellis is asking this Court to make a finding that would essentially abrogate the entire history of the recording laws of this state, which would state that third part, that purchasers could not rely on the public record as it stands because some deed in the history of time may have been intended as a mortgage. It further asks this Court to find that every purchaser must go back to every transaction prior to it and determine whether there was a sufficiency of price that was paid. I think the only thing that's involved here is whether that home was noticed, whether there was a duty to inquire, and you seem to want to avoid that. U.S. Bank is not avoiding that the law says that a purchaser is on notice of a party in possession. What U.S. Bank is saying is that under these circumstances, there is most certainly a distinction between holding property in a warranty deed and holding property in trust. And here's the other limiting factor that undercuts your opening the floodgate sort of argument. There was no mortgage on this property, true? At least initially? Until the mortgage by CPR, CRG, came into existence. And to that extent, this is that unique situation because if there is an existing mortgage, then the banks involved carrying that mortgage protect the interest of its own and also can give its implicit assurances that a future conveyance is good. So only in the situation where there is no existing mortgage or the existing mortgage itself or is unrecorded, you know, the situation we have here, does the rule that may come out of this case really apply? It doesn't apply in other circumstances because we have banks already involved. There was no bank here. There was a preexisting mortgage by the land trust, which is not an issue here because we're talking about the interest of Ellis and notice of interest Ellis or the lack of notice of interest Ellis. And then a subsequent mortgage made by U.S. Bank. And U.S. Bank relied on the status of the public record in determining title. The next question is, was somebody else in possession and what was the duty of U.S. Bank to that person in possession? And the holding in Goldberg v. Ehrlich was affirmed by LaSalle Bank v. Verone. The LaSalle Bank Court specifically states, plaintiff has pointed to no authority and our research likewise has uncovered no authority to suggest that the holdings in Ehrlich, Miller, and Burnax Oil do not represent the law in Illinois. That is a blatant affirmation of the rule of law in Ehrlich. The LaSalle Bank Court found differently because the facts in that case were differently. The totality of the circumstances in that case were so different than the totality of the circumstances in this case. The LaSalle Bank Court emphatically repeated and relied on the fact that Verone represented an affirmative representation to the mortgagee in that case or its agent that she owned the property. That representation was specifically contrary to other facts known to the bank in that case. And even in that case, the court remanded. It didn't even make a finding that the mortgagee wasn't a BFP. It said, go back to the trial court and look at this. But in this case, we don't have that totality of circumstances. There was no affirmative representation by Ellis or her grandson, despite the fact that there was an appraisal of the property. There was nothing in the public record. Ellis wasn't in possession of the property. There are no totality of circumstances here, as the court in LaSalle Bank found, that would have put U.S. Bank on notice to go and look further. Instead, what the law says is that U.S. Bank is allowed to rely on the public record. That possession by a tenant of property held in a land trust only imputes notice of that tenant's interest, which is nothing more than a tenancy. It says that inadequacy of price is not notice of a defect in title because to say that it is... Was there a tenant, a rental agreement regarding that? No, there wasn't a rental agreement. Was there any evidence? Did Mr. Villasenor submit his tax returns showing that he had received rental income for that property? Villasenor was not entitled to the property when the issue of tenancy would have been looked at. The issue of possession... I'm sorry. It was in a land trust, and that's exactly the point. Wouldn't the bank want to know what the rental income is for the property that it is issuing a mortgage to cover? It's issuing a mortgage to Villasenor as an individual, which would make any rental income to the trust perhaps moot, but the bank doesn't have to look at that. Are you saying that Villasenor was going to reside in the property? We don't know what Villasenor's intentions were. Why wouldn't a mortgage bank know that? We don't know what the bank would have known. Wouldn't the bank want to know that? Whether he was going to reside there or not? I can't speak to what the bank would have wanted to know. What I can speak to is what the evidence before this court was, before the trial court was, and the two facts relied on by the trial court were the possession of property and the inadequacy of notice, and under the facts of this case, the law in this state says those facts do not impute notice, individually or collectively, because land trusts physically cannot occupy property, and the rule is, is possession inconsistent with record ownership? Possession was not inconsistent in this case. Thank you for your time, Justice Ginsburg. Thank you. This matter will be taken under advisement.